1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

SERVICELINK NLS, LLC,

               Plaintiff,

    v.

COOPER CASTLE LAW FIRM,
LLC d/b/a COOPER CASTLE
LAW FIRM LLP, CAREN CASTLE,
LAWRENCE CASTLE, AND
AARON WAITE,

               Defendants.

Case No. 2:16-cv-00005-APG-GWF

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

(ECF No. 29)

Defendant Cooper Castle Law Firm, LLC forecloses on homes for mortgage lenders. Cooper Castle hired plaintiff ServiceLink NLS, LLC to provide title services for some of these foreclosures. ServiceLink alleges that Cooper Castle has not paid its invoices for several years even though lenders have been reimbursing the firm for ServiceLink's work. ServiceLink brings claims for breach of contract, unjust enrichment, constructive trust, breach of fiduciary duty, conversion, and fraud. It brought these claims against the law firm and the three individuals who operate the firm.

      The individual defendants now move to dismiss all of the claims against them, and the firm moves to dismiss the claims of fraud, breach of fiduciary duty, and constructive trust against it. I grant the motion in part. ServiceLink's complaint, at best, alleges that the law firm breached a contract by not paying ServiceLink's invoices—there are no facts to state plausible claims against the individual defendants. I therefore dismiss all claims against the individuals.

      As to Cooper Castle, ServiceLink fails to allege specific facts about what fraudulent statements the firm made, so I dismiss that claim. But Cooper Castle's arguments for dismissing the constructive trust and breach of fiduciary duty claims fall short. Cooper Castle contends that ServiceLink cannot sue for constructive trust (a trust over specific property) because its complaint alleges that the defendants already spent ServiceLink's money—thus it has admitted there is no

1    specific property left to attach.  But ServiceLink merely alleges that the defendants

2    misappropriated money; it never concedes that the defendants do not still have some in their

3    possession.  As to the fiduciary duty claim, Cooper Castle argues that this claim fails under Rule

4    9's strict pleading standard—but Rule 8 applies to this claim, not Rule 9.  I therefore deny Cooper

5    Castle's motion as to ServiceLink's fiduciary and constructive trust claim.

6    **I.      BACKGROUND**

7           *A.      ServiceLink and Cooper Castle's relationship.*

8           Cooper Castle has been retained by many banks to handle foreclosure proceedings against

9    defaulted borrowers.[1]  Cooper Castle, in turn, has hired ServiceLink to perform various tasks

10   associated with the non-judicial foreclosure (such as checking title documents).[2]

11          ServiceLink alleges that it entered into contracts with Cooper Castle to provide these

12   services,[3] but its complaint suggests that the parties had a more complicated relationship than a

13   simple arms-length contract.  ServiceLink alleges that although it contracted directly with Cooper

14   Castle, ServiceLink was really working for the lenders that had hired the law firm.[4]

15          According to ServiceLink, when a lender wanted ServiceLink to perform title services, the

16   lender would use Cooper Castle as an intermediary to handle the invoicing.[5]  ServiceLink would

17   perform its services, bill Cooper Castle, and Cooper Castle would pass those fees directly through

18   to the lenders without any markup.[6]  The lender would then remit payment to Cooper Castle to

---

[1] ECF No. 1 at 4-5.  The following facts are taken from the complaint, and I assume they are true for purposes of ruling on the defendants' motion.

[2] *Id.* at 5.

[3] *Id.* at 12.  Notably, ServiceLink does not allege that it entered into any agreements with the individual defendants who manage Cooper Castle.

[4] *Id.* at 5-9.

[5] *Id.*

[6] *Id.*

1   pass back to ServiceLink.[7]  ServiceLink thus alleges that Cooper Castle was effectively a trustee

2   who simply held money and distributed it between lenders and ServiceLink.

3   **B.   Cooper Castle allegedly stops paying ServiceLink but fraudulently induces it
         to keep working for the firm.**

5   Starting in August of 2010, ServiceLink alleges that Cooper Castle stopped passing some

6   of the lenders' payments back to ServiceLink.  In other words, Cooper Castle was receiving

7   payments from the lenders earmarked for ServiceLink but not turning them over to ServiceLink.

8   ServiceLink had no way of knowing that Cooper Castle was receiving payments from lenders

9   because, in the foreclosure industry, it's common for lenders to significantly delay payments

10  while waiting for the lengthy foreclosure process to play out.[8]

11  ServiceLink's complaint is not clear about why Cooper Castle had an obligation to pay

12  ServiceLink within a certain time frame after receiving payments from lenders.  ServiceLink does

13  not allege that its contract with Cooper Castle contained any "timely payment" terms.[9]  It may be

14  suggesting that this obligation arose from some trust duty Cooper Castle took on by acting as an

15  intermediary (despite the fact that, presumably, the parties had a contract outlining their

16  relationship in writing).[10]  It may also be suggesting that Cooper Castle had this duty because it

17  made representations to ServiceLink outside of the parties' contract.[11]  ServiceLink alleges that it

18  relied on these misrepresentations in continuing to work for Cooper Castle.[12]

19  */ / / /*

20

21  [7] *Id.*

22  [8] *Id.* at 18.

23  [9] *Id.* at 12-13.

24  [10] *See id.* at 15.

25  [11] *Id.* at 17.  The complaint contains a conclusory allegation that Cooper Castle "falsely
    represented" that it would "immediately pay" ServiceLink, but the lack of specific factual
26  allegations make it unclear precisely what was promised.

27  [12] ServiceLink also provides a number of conclusory allegations about the individual
    defendants' participation in this "scheme," such as that the individuals, "upon information and
28  belief," "gave directions or authorized" Cooper Castle's acts. *Id.* at 10-11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  ANALYSIS

### A. Standard for Motions to Dismiss

A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[13]  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[14]  "Factual allegations must be enough to rise above the speculative level."[15]  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[16]

### B. Claims against the individual defendants for breach of contract, unjust enrichment, conversion, and piercing Cooper Castle's corporate veil.

ServiceLink's unjust enrichment and conversion claims against the individual defendants fail because there are no specific allegations plausibly suggesting that any of those defendants ever received anything, personally, from ServiceLink.  As a preliminary note, I must ignore ServiceLink's conclusory allegations that the individual defendants "received, misappropriated, and misused" ServiceLink's money.[17]  There are no specific facts plausibly suggesting that any of the individual defendants received anything from ServiceLink.  Alleging that a company received property does not mean that that company's managers received the property.

Nor are there any specific facts to make ServiceLink's breach of contract or veil-piercing claims plausible as to these individual defendants.  As ServiceLink admits, the complaint never

---

[13] Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[15] *Twombly*, 550 U.S. at 555.

[16] *Iqbal*, 556 U.S. at 678 (internal citation omitted).

[17] *Id*.

suggests that the individual defendants were parties to a contract with it.[18]  The only parties to the contract were ServiceLink and the Cooper Castle firm.  ServiceLink argues that it should be allowed to proceed against the individual defendants on the theory that they are alter egos of Cooper Castle.  But even if I were to entertain that theory, there are no specific allegations plausibly suggesting that the individual defendants are alter egos of the firm.[19]

I thus dismiss the unjust enrichment, breach of contract, conversion, and veil-piercing claims as to all of the individual defendants.[20]

**C. Fraud**

A party asserting a fraud claim "must state with particularity the circumstances constituting fraud."[21]  Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[22]  ServiceLink thus

---

[18] ServiceLink cannot sue the individual defendants for breaching a contract unless it can show each of these defendants was a party to it and breached it. *Richardson v. Jones,* 1 Nev. 405, 405 (1865).

[19] There are no alleged facts about whether the individual defendants had a unity of interest with Cooper Castle and influenced it. *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998).  ServiceLink simply alleges that Cooper Castle was undercapitalized and that the defendants perpetuated fraud.  That is not enough, even at this stage. *See ING Bank, FSB v. Mata*, No. CV-09-748-PHX-GMS, 2009 WL 4672797, at *7 (D. Ariz. Dec. 3, 2009); *Fid. Nat'l Info. Servs., Inc. v. Plano Encryption Techs., LLC*, No. CV 15-777-LPS-CJB, 2016 WL 1650763, at *7-8 (D. Del. Apr. 25, 2016) (noting that granting discovery regarding an alter-ego claim would amount to sanctioning a "fishing expedition").

[20] ServiceLink also contends Cooper Castle's acts are automatically attributable to its officers, citing to *Wool v. Tandem Computers Inc.,* 818 F.2d 1433 (9th Cir. 1987).  But *Wool* addresses only the narrow circumstance where a corporation makes a statement on behalf of its officers, such as by issuing a prospectus or press release. *Id.*  It certainly does not alter the fundamental principal that a corporation's acts are distinct from its officers.

[21] Fed.R.Civ.P. 9(b).

[22] *Bly–Magee v. California,* 236 F.3d 1014, 1018 (9th Cir.2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993)).

must allege in its complaint specific facts about the statements the defendants made, which

defendants made these statements, how these statements were false, how ServiceLink relied on

these statements, and what damage this reliance caused.[23]  In other words, ServiceLink must

allege specific facts about "the who, what, when, where, and how" of the fraud.[24]

ServiceLink's complaint sheds some light (albeit dim) on the "what": it alleges that the

defendants lied at some point over the last six years about intending to pay ServiceLink its fees,

and that they lied at some point over the last six years about whether they received money owed

to ServiceLink.  But that is it.  The complaint contains no allegations about which defendants

made misrepresentations and when and how these misrepresentations were made.[25]  Nor does

ServiceLink provide any allegations about why relying on these misrepresentations was

justifiable under the circumstances, how these misrepresentations were material, or how it relied

on them in continuing to provide services to Cooper Castle.[26]  ServiceLink's few conclusory

sentences would not be enough to satisfy Rule 8's more relaxed standard, much less Rule 9's

more stringent one.

In short, ServiceLink's allegations do not fairly apprise any of the defendants about their

alleged fraud.  I thus dismiss this claim as to all defendants.[27]

---

[23] *Lancaster Com. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir. 1991).

[24] *Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[25] ECF No. 1 at 17-18.

[26] *Id.*

[27] ServiceLink also suggests that it should be allowed to conduct discovery because evidence of the defendants' fraud is exclusively in their possession. *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).  But ServiceLink has not shown that this is the case.  ServiceLink obviously has access to all of Cooper Castle's communications with it, and those communications form the bulk of ServiceLink's fraud allegations.  ServiceLink's complaint makes clear that it has a close relationship to ServiceLink and the lenders involved (indeed, that is

### D. Breach of Fiduciary Duty

The defendants next argue that ServiceLink's breach of fiduciary duty claim fails because it has not alleged enough specific facts to comply with Rule 9's heightened pleading standard—in other words, ServiceLink has not alleged the who, what, when, where, and how of defendants' breach. But Rule 9 does not apply to this claim. Defendants appear to concede in their reply[28] that whether Rule 9 applies to a breach of fiduciary claim turns on how a defendant is alleged to have breached its duty—if a plaintiff alleges a defendant breached by committing fraud, Rule 9 applies; if a plaintiff alleged a defendant breached a duty in some other way, Rule 8's standard applies.[29]

Under this framework, Rule 9 does not apply to ServiceLink's breach of fiduciary claim. ServiceLink does not allege that defendants breached their fiduciary duty by committing fraud (or at least, that is not the only theory it alleges). The complaint alleges that the defendants acquired a fiduciary duty by accepting money that lenders had specifically earmarked for ServiceLink, and it alleges that the defendants breached that duty by not handing that money over "in a reasonable and prudent manner."[30] The fact that ServiceLink also alleges that defendants committed fraud by inducing ServiceLink to continue to perform its services is a separate matter.

To the extent that ServiceLink alleges that the defendants breached a fiduciary duty based on misrepresentations they made to ServiceLink, that claim would of course fail for the same reasons as the fraud claim above. And there is no basis for a fiduciary duty claim against the individual defendants. There are no allegations suggesting that any of the individual defendants took on fiduciary duties personal to themselves. ServiceLink's claim for breach of fiduciary duty stems from the firm receiving payments earmarked for ServiceLink. And ServiceLink provides no authority suggesting that a person can inherit a company's fiduciary duty merely by managing

---

the theory of this case). *See id.* (rejecting argument that Rule 9's standards should be relaxed where the plaintiff had a close working relationship with the corporate defendant).

[28] ECF No. 42 at 9-10.

[29] *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201 (D. Nev. 2009).

[30] ECF No. 1 at 15.

1   that company.  Indeed, that would run counter to longstanding principles of corporate

2   distinctness.

3          But to the extent that ServiceLink's fiduciary duty claim is based on some sort of trust

4   relationship arising from the parties' respective relationships with various lenders, Cooper Castle

5   has not shown that dismissal is warranted.[31]

6          **E.  Constructive trust**

7          Cooper Castle finally argues that ServiceLink's constructive trust claim is implausible

8   because the complaint admits that the defendants already spent ServiceLink's money (so there is

9   nothing over which to place a trust).  While it is true that a constructive trust may be placed only

10   over specific property,[32] it is not clear that ServiceLink concedes that Cooper Castle spent all of

11   ServiceLink's money.  ServiceLink alleges that the defendants appropriated money and misused

12   it for their personal ends; it never takes the position that the defendants could not also have

13   retained some of it.  I thus decline to dismiss this claim as against Cooper Castle.[33]

14   **III.   CONCLUSION**

15          IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(ECF No. 29) is**

16   **GRANTED IN PART AND DENIED IN PART**.  As to the individual defendants, I dismiss all

17   of ServiceLink's claims without prejudice.  As to Cooper Castle, I dismiss ServiceLink's claim

18   _/ / / /_

19

20

21

---

22       [31] Defendants do not dispute whether the Cooper Castle firm took on a fiduciary duty in
23   the first place by acting as a payment intermediary between ServiceLink and lenders—I thus need
      not reach that question at this stage. _See Long v. Towne_, 639 P.2d 528, 530 (1982) (discussing
24   requirements for a fiduciary duty to arise, including that one party place special trust or
      confidence in another).  But if contracting for a vendor to provide services creates a trust
25   relationship, it is hard to imagine many business interactions that would not create trustee duties.

26       [32] _Locken v. Locken_, 650 P.2d 803, 804 (1982).

27       [33] I dismiss this claim against the individual defendants for the same reasons that I dismiss
      the conversion claims against them: there are no specific facts suggesting that any one of the
28   individual defendants ever personally took possession of ServiceLink's money.

1  for fraud without prejudice.  I otherwise deny the defendants' motion.  ServiceLink may file an

2  amended complaint correcting the defects in its Complaint, if it can assert sufficient factual bases

3  for the claims, within 14 days of entry of this order.

4  DATED this 27th day of January, 2017.

6  _____
   ANDREW P. GORDON

7  UNITED STATES DISTRICT JUDGE